**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK (FOLEY SQUARE)**

| | |
|---|---|
| SHERRI COHEN, | Civil Action No. 1:18-cv-06210-JSR |
| Plaintiff, | **DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** |
| vs. | |
| EQUIFAX INFORMATION SERVICES LLC, et al., | |
| Defendants. | |

Defendant, Equifax Information Services LLC ("Equifax"), by and through undersigned Counsel, hereby files its Response in Opposition to Plaintiff Sherri Cohen's ("Plaintiff") Motion for Leave to File what she styles as a "Second Amended Complaint"[1] ("SAC") (Doc. 61).

## **INTRODUCTION**

In her SAC, Plaintiff seeks to lodge five causes of action against Equifax. She reiterates the First and Second causes of action from her original Complaint: (1) Negligent violation of §§ 1681e(b) and 1681i(a) of the Fair Credit Reporting Act ("FCRA"); and (2) Willful violation of §§ 1681e(b) and 1681i(a) of the FCRA; (*Id*. ¶ 109).[2] She now seeks to add three new causes of action: (3) Willful violation of § 1681i(a) of the FCRA; (*Id*. ¶¶ 110-116),[3] (4) "Retaliation;" (*Id*. ¶¶ 117-122), and (5) Intentional Infliction of Emotional Distress ("IIED") (*Id*. ¶¶ 123-127).

---

[1] Although styled as a Second Amended Complaint, if leave is granted it would actually be Plaintiff's First Amended Complaint. Nevertheless, Equifax uses here the nomenclature adopted by Plaintiff.

[2] In her proposed SAC, Plaintiff purports to incorporate by reference the first and second causes of action from her original complaint. (Doc. 1-4 ¶¶ 61-63, 64-67.)

[3] This appears to be a duplicate of the Second cause of action, inasmuch as it alleges a failure to conduct a reasonable reinvestigation, except that it is premised on Plaintiff's claim that during the pendency of this litigation she was required to communicate through Equifax's counsel "to seek correction of" unspecified "mistakes" on her credit report. (Doc. 61 ¶ 112.)

As set forth in more detail below, Plaintiff's Motion should be denied for two reasons. *First,* Plaintiff has not demonstrated the diligence required to file an amended Complaint after the deadline for doing so in the Court's Scheduling Order. *Second*, Plaintiff's Motion should be denied on grounds of futility. Plaintiff's new claim for violation of § 1681i(a) of the FCRA fails as a matter of law because she has not alleged an inaccuracy, an essential element of the cause of action. Plaintiff's claim for "Retaliation" fails as a matter of law because no such cause of action exists under the FCRA. Finally, Plaintiff's claim for Intentional Infliction of Emotional Distress fails as a matter of law because she does not allege extreme and outrageous conduct, an essential element of the cause of action.

## STANDARD

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, after the time for amendment as of right has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Further, "[t]he court should freely give leave when justice so requires." *Id*. Leave to amend should generally be granted "[i]n the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (internal quotation marks omitted). However, where the Court has set a deadline for amendments, after that deadline passes motions to amend should only be granted upon a showing of "good cause" under Rule 16(b) of the Federal Rules of Civil Procedure. *See Parker v. Columbia Pictures Indus*., 204 F.3d 326, 340 (2d Cir. 2000). A finding of good cause "depends on the diligence of the moving party." *Id*.

## ARGUMENT

## I.  PLAINTIFF HAS NOT SHOWN GOOD CAUSE TO MODIFY THE COURT'S SCHEDULING ORDER

Plaintiff has been afforded multiple opportunities to amend her Complaint over the course of this litigation but did not properly do so. As an initial matter, the Court's Case Management Plan set a deadline of August 17, 2018 for amendments without leave of Court. (Doc. 15 at 1.) Plaintiff did not file an Amended Complaint by that deadline.

Then, on November 15, 2018, the parties appeared for a case management conference. The Court ordered that, if Plaintiff wished to amend her Complaint "to add an additional cause of action relating to the freezing of her credit report during the pendency of this litigation," then Plaintiff was to provide Defendants with a copy of her proposed Amended Complaint by **November 21, 2018**. (Doc. 28 at 2.) If Defendants did not agree to the amendment, Plaintiff was to file her motion to amend by December 7, 2018. (*Id*. at 3.)

Plaintiff did not provide Defendants with a copy of her proposed Amended Complaint by the November 21, 2018 deadline. Equifax notified the Court that Plaintiff had not done so, and, therefore, it considered her "desire for a proposed amendment . . . to have been abandoned." (Doc. 33 at 2.) In response, Plaintiff still did not comply with the Court's December 7, 2018 deadline to file a motion to amend. She did, however, file a letter dated December 6, 2018 in which she asked for "more time to perfect the complaint," stating that it was "on its way." (Doc. 36 at 2.) She also filed an untimely one-page summary of a proposed "Amended Complaint Against Equifax" on December 18, 2018, (Doc. 42), accompanied by another one-page letter in which she accused Defendants of making "false assertions that [she] had not supplied material at all to them and had thus abandoned my case,"[4] (Doc. 43).

---

[4] Despite accusing Defendants of "false assertions," in a later filing, Plaintiff admitted that she had not complied with the Court's November 21, 2018 deadline to deliver a proposed Amended Complaint to Defendants. (Doc. 51 at 1 ("In the afternoon of Nov. 20, Plaintiff received Magistrate Parker's Order with a Nov. 15 date on it. The order

Thereafter, and after a flurry of additional filings by Plaintiff, the Court directed Defendants to submit a letter by January 11, 2018, "setting forth responses, if any, to the Plaintiff's submissions, including the proposed amendment to the Complaint."  (Doc. 46.) Equifax filed its letter opposing the proposed amendment.  (Doc. 54.)  Plaintiff then waited more than two months, until March 18, 2019, to file her proposed SAC.  (Doc. 61.)

Plaintiff has not shown the diligence required for a finding of "good cause" to modify the Court's Case Management Plan to allow her to file an untimely amended pleading.  *Columbia Pictures Indus.*, 204 F.3d at 340.  Plaintiff has repeatedly missed deadlines set by the Court, ( Docs. 15, 28, 32), regarding her proposed amendment.  To explain her failure, Plaintiff has, for example, disingenuously claimed that she was "ambushed" by the Court's deadline to serve a proposed Amended Complaint, (Doc. 51 at 1), a claim that is categorically false, as she was present at the November 15, 2018 case management conference where the deadlines were set. Plaintiff makes no explanation for why she waited until **March 18, 2019** to file her proposed SAC, (Doc. 61), despite claiming in a December 6, 2018 letter that it was "on its way," (Doc. 36 at 1.)  Accordingly, this Court should deny Plaintiff's motion pursuant to Rule 16(b).

## II.     PLAINTIFF'S PROPOSED AMENDMENTS ARE FUTILE

Even if this Court were to analyze Plaintiff's motion to amend under the more lenient Rule 15(a) standard and allow Plaintiff to amend without a showing of good cause for missing the deadline, this Court should deny the motion on grounds of futility.  In her proposed SAC, Plaintiff seeks add three new causes of action against Equifax:   (3) Willful violation of § 1681i(a) of the FCRA; (Doc. 61 ¶¶ 110-116), (4) "Retaliation;" (*Id*. ¶¶ 117-122), and (5)

---

asked for completion and transmittal of a few detailed letters that required [] time consumer fact checking and to write a brief that was clear/accurate and was supported by case law.  The due date was to be Nov. 21, the next day. I felt ambushed and overwhelmed. I am reasonably intelligent, but I am not super human and could not completed a deliver a product in that time frame.").)

Intentional Infliction of Emotional Distress, (*Id*. ¶¶ 123-127). Each of Plaintiff's newly proposed causes of action is futile, and, therefore her motion should be denied.

### A. PLAINTIFF NEW § 1681i(a) CLAIM FAILS TO ALLEGE AN INACCURACY

In her proposed SAC, Plaintiff seeks to add a new claim under 15 U.S.C. § 1681i(a). In the SAC's "Third Cause Of Action Against Equifax," Plaintiff alleges that Equifax placed a "litigation lock" on her credit file after this litigation commenced. (Doc. 61 ¶ 111.) Plaintiff claims that this required her to "use a convoluted, awkward and stressful means to seek correction of mistakes on her credit report." (*Id*. ¶ 112.) Plaintiff claims that Equifax "failed to correct errors in her credit report" and "failed to conduct a reasonable [re]investigation" of her alleged dispute. (*Id*. ¶¶ 113-114.) What Plaintiff does **not** do is detail the purported inaccuracies that she claims she disputed to Equifax via Equifax's counsel in this litigation.

A review of this Court's docket reveals two alleged inaccuracies that Plaintiff has asserted through the pendency of this litigation. The first concerns her belief that all three addresses that she uses (one residence and two post office boxes) should appear on her credit reports as "current address." (*See* Doc. 39.) As Equifax has repeatedly explained,[5] Equifax credit files have a single "slot" for a "current address," and multiple "slots" for "previous addresses." The "current address" slot will be filled by the address most recently provided to Equifax by one of Plaintiff's creditors. This is not inaccurate under the FCRA because it is neither "patently inaccurate," nor is it "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Kilpakis v. JPMorgan Chase Fin. Co. LLC*, 229 F. Supp.3d 133, 141 (E.D.N.Y. 2017).

---

[5] *See, e.g*., (Doc. 54 at p.2.)

The second purported inaccuracy Plaintiff has returned to over the course of this litigation concerns an Applied Bank tradeline. Plaintiff has complained that, while the Date of First Delinquency was accurately reported, and the account marked as a charge off, the tradeline omitted the date that the account was actually charged off by the lender. (Doc. 39.) But the absence of the date that Applied Bank formally charged off the account does not render the tradeline inaccurate. [6] First, the formal charge off date is not relevant to the FCRA's "age off" provision, 15 U.S.C. § 1681c. Second, the information on the tradeline that does have legal significance under that provision, the Date of First Delinquency, is accurately reporting on the tradeline, and its inclusion would clearly convey to potential creditors that this is an account that went delinquent some time ago. In short, the absence of the formal charge off date is neither "patently inaccurate," nor is it "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Kilpakis*, 229 F. Supp.3d at 141.

Accordingly, because Plaintiff does not allege an **actual** inaccuracy, her new § 1681i(a) claim fails as a matter of law. Thus, amendment of the pleadings to add her new "Third Cause Of Action Against Equifax" would be futile. Therefore, this Court should deny Plaintiff's motion pursuant to Rule 15(a). *See Foman*, 371 U.S. at 182 (listing "futility of amendment" as reason to deny leave to amend under Rule 15).

### B. PLAINTIFF'S "RETALIATION" CAUSE OF ACTION DOES NOT EXIST

---

[6] An "account history" section may sometimes appear below this tradeline information, wherein an "L" notation may be placed for consecutive months in which the account was in "charged off" status. This section was deleted by Equifax as a courtesy to Plaintiff as it appeared that Plaintiff was confused by the contents thereof, (Doc. 33 at 2), notwithstanding the fact that the reporting of multiple "L" notations has been held to be accurate under the FCRA. *See Barakat v. Equifax Info. Servs. LLC*, 2017 WL 3720439, at *3 (E.D. Mich. Aug. 29, 2017) (granting summary judgment in favor of defendant CRAs, rejecting plaintiff's "assertion that charge-offs can only be listed once, or that listing the charge-off in multiple months created an inaccuracy or is misleading"). As a further courtesy to Plaintiff, and good faith effort to modify the tradeline to accommodate Plaintiff's desire for the charge off date to include in the tradeline, on January 11, 2018, Equifax added an "L" notation for only the month of 11/2012.

In the proposed SAC's "Fourth Cause Of Action Against Equifax," Plaintiff seeks to add a claim for "Retaliation," premised upon her dissatisfaction with the litigation hold on her credit file which, while not preventing third-party potential creditors from accessing her file during this litigation, requires her to communicate through Equifax's counsel rather than communicating directly with Equifax. Plaintiff's "Retaliation" claim fails as a matter of law because there is no such cause of action under the FCRA. "Retaliation" claims exist under other comprehensive federal statutes, but they are explicitly authorized by the statutory scheme. So, for example, retaliation exists under the Fair Labor Standards Act,[7] Title VII of the Civil Rights Act of 1964,[8] the Age Discrimination in Employment Act,[9] and the Equal Credit Opportunity Act.[10] There is no such statutory authorization for a retaliation claim under the FCRA, and, therefore Plaintiff's claim fails as a matter of law.

In any event, Plaintiff's claim also fails because nothing in the FCRA prohibits a consumer reporting agency from requiring a consumer to communicate through its counsel during the pendency of litigation brought by the consumer. Section 1681i(a) of the FCRA requires a consumer reporting agency to "free of charge, conduct a reasonable reinvestigation" of consumers' disputes of the accuracy of credit information, 15 U.S.C. § 1681i(a)(1)(A), but the statute does not specify the manner in which a consumer reporting agency must accept such

---

[7] 29 U.S.C. § 215(a)(3) (making it unlawful to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter").

[8] 42 U.S.C. § 2000e-3(a) (making it unlawful to "discriminate against any individual . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter").

[9] 29 U.S.C. § 623(d) (making it unlawful to "discriminate against any individual . . . because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter").

[10] 15 U.S.C. § 1691(a)(3) (making it unlawful "for any creditor to discriminate against any applicant . . . because the applicant has in good faith exercised any right under this chapter").

disputes.  Similarly, § 1681g(a) of the FCRA requires a consumer reporting agency to "upon request . . . clearly and accurately disclose to the consumer" the contents of her credit file, 15 U.S.C. § 1681g(a)(1), but the statute does not specify the manner in which a consumer reporting agency must accept such requests.[11]

There is good reason for Equifax to request that consumers who are engaged in litigation with it communicate through its counsel rather than seeking to communicate directly with Equifax.  Parties in litigation are engaged in an adversarial process in which each is entitled to representation by counsel.  An Equifax representative is entitled to the advice of counsel when communicating with an adversarial party.  Allowing an adversarial party to communicate with Equifax without going through Equifax's counsel would thwart that right.  A communication between a litigant and Equifax without notification to Equifax's counsel could result in a litigant seeking to extract an admission or discovery to be used in the litigation.  Courts have recognized the validity of such concerns in case involving *pro se* cases, where the litigant is serving as their own counsel.  *See, e.g.*, *Green v. Seattle Art Museum*, 2008 WL 624961, at *8 (W.D. Wash. Feb. 8, 2008) ("As a pro se litigant who is suing the Defendant in not one, but two, lawsuits in this court, Plaintiff is forbidden to have any form of contact (including e-mails, letters or telephone calls) with any current employee of SAM concerning any issues touching on his litigation except through Defendant's counsel.").

---

[11] Indeed, in the one case Equifax could locate regarding the "litigation lock" issue, the Court did not hold that such a practice violated the FCRA.  Rather, in *Spector v. Equifax Info. Servs*., 338 F. Supp. 2d 378, 389 (D. Conn. 2004), the Court opined that "consciously disregard[ing]" a credit file request "for over a month" could possibly amount to a willful violation of § 1681g.  It is quite telling that Plaintiff does not actually seek to include a cause of action under *Spector*, but rather seeks only to rely on her dissatisfaction with the "litigation lock" to gin up claims for "Retaliation" and IIED. Indeed, up through the date of Plaintiff's proposed SAC, Equifax has, free of charge, sent Plaintiff credit file disclosures dated September 25, 2018; October 3, 2018; November 30, 2018; January 10, 2019; January 11, 2019; February 18, 2019; February 22, 2019 (with score); February 26, 2019 (with score); and March 13, 2019. Since filing her proposed SAC, Plaintiff has continued to request credit file disclosures and Equifax has continued to send them to her.

Accordingly, Plaintiff's purported Retaliation cause of action is not authorized under the FCRA, and, in any event, would fail. Therefore, this Court should deny Plaintiff's motion pursuant to Rule 15(a). *See Foman*, 371 U.S. at 182 (listing "futility of amendment" as reason to deny leave to amend under Rule 15).

### C. PLAINTIFF'S IIED CLAIM FAILS AS A MATTER OF LAW

Finally, Plaintiff's proposed SAC adds a "Fifth Cause Of Action Against Equifax" for Intentional Infliction of Emotional Distress. (Doc. 61 ¶¶ 123-127.) The Tort of IIED exists at common law in New York and has four elements: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001). The conduct in question must be "extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 157-58 (2d Cir. 2014). It is a "highly disfavored tort under New York law," and "is to be invoked only as a last resort." *Id*. (citations omitted).

Plaintiff has not alleged conduct that "transcends the bounds of decency" so as to be "atrocious and intolerable in a civilized society." Therefore, this Court should deny Plaintiff's motion pursuant to Rule 15(a). *See Foman*, 371 U.S. at 182 (listing "futility of amendment" as reason to deny leave to amend under Rule 15).

### CONCLUSION

For the reasons stated herein, Equifax respectfully requests that the Court deny Plaintiff's motion for leave to file her proposed "Second Amended Complaint."

Dated:  April 2, 2019                            Respectfully submitted,

                                                 /s/ *Jonathan D. Klein*
                                                 Jonathan D. Klein
                                                 CLARK HILL PLC
                                                 830 Third Avenue, Suite 200
                                                 New York, New York 10022
                                                 Tel. (646) 395-8580

                                                 One Commerce Square
                                                 2005 Market Street, Suite 1000
                                                 Philadelphia, Pennsylvania 19103
                                                 Tel. 215.640.8500
                                                 Fax 215.640.8501
                                                 jklein@clarkhill.com

                                                 *Attorneys for Defendant,*
                                                 *Equifax Information Services LLC*